## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TOMMIE MOLETTE #576499**                     **CIVIL ACTION**

**VERSUS**                                      **NO. 21-1464**

**DARRYL VANNOY, WARDEN**                       **SECTION: "J"(3)**

## REPORT AND RECOMMENDATION

Petitioner, Tommie Molette, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be DISMISSED WITH PREJUDICE.

Molette, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On January 23, 2014, Molette was charged by bill of indictment in the Parish of Jefferson with the second degree murder of Deshon Evans and the attempted second degree murder of Jonquell Neal in violation of La. Rev. Stat. §§ 14:30.1 and 14:27.[1] Following a six day trial, the jury found Molette guilty as charged.[2] On June 26, 2017, the trial court sentenced Molette to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence as to count one and fifty years at hard labor without the benefit of probation, parole or suspension of sentence as to count two.[3]

---

[1] State Rec. Vol. 1 of 17, Bill of Indictment, 1/23/14.
[2] State Rec. Vol. 1 of 17, Trial Minutes, 5/22/17; Trial Minutes, 5/23/17; Trial Minutes, 5/30/17; Trial Minutes, 5/31/17; Trial Minutes, 6/1/17; Trial Minutes, 6/2/17; Verdicts, 6/2/17; State Rec. Vol. 2 of 17, Trial Transcript, 5/30/17; State Rec. Vol. 3 of 17, Trial Transcript (con't), 5/30/17; Trial Transcript, 5/31/17; State Rec. Vol. 4 of 17, Trial Transcript (con't), 5/31/17; Trial Transcript, 6/1/17; State Rec. Vol. 5 of 17, Trial Transcript (con't), 6/1/17; Trial Transcript, 6/2/17.
[3] State Rec. Vol. 1 of 17, Sentencing Minutes, 6/26/17; State Rec. Vol. 5 of 17, Sentencing Transcript, 6/26/17.

On October 17, 2018, the Louisiana Fifth Circuit affirmed Molette's conviction and sentence.[4]  On April 22, 2019, the Louisiana Supreme Court denied Molette's related writ application without reasons.[5]

On May 13, 2020, Molette filed an application for post conviction relief.[6]  On October 5, 2020, the state district court denied Molette's application.[7]  On February 17, 2021, the Louisiana Fifth Circuit denied Molette's related writ application.[8]  On June 1, 2021, the Louisiana Supreme Court denied his related writ application.[9]

On July 30, 2021, Molette filed the instant federal application seeking habeas corpus relief raising the following claims: (1) Louisiana law relating to the joinder of offenses and co-defendants for trial is unconstitutional; (2) La. Code Crim. P. art. 782 and article 1 § 17 of the Louisiana Constitution are unconstitutional; (3) ineffective assistance of counsel in failing to allow him to testify on his own behalf; (4) ineffective assistance of counsel in failing to object to testimony in violation of his right to confrontation; (5) the trial court erred in denying his motion to sever; (6) the trial court erred in denying his re-urged motion to sever; (7) the trial court erred in denying his motion to quash and motion for mistrial; (8) the trial court erred in denying his motion for new trial.[10]

On June 3, 2022, the state filed a response conceding that the application is timely.  The state asserts that Molette's first claim alleging that Louisiana's joinder articles violate due process

---

[4] State v. Molette, 258 So. 3d 1081 (La. App. 5th Cir. 2018); State Rec. Vol. 17 of 17.
[5] State v. Molette, 268 So. 3d 304 (La. 2019); State Rec. Vol. 10 of 17.
[6] State Rec. Vol. 10 of 17, Application for Post-Conviction Relief, 5/13/20 (signed 5/5/20).
[7] State Rec. Vol. 12 of 17, Order, 10/5/20.
[8] State Rec. Vol. 12 of 17, La. App. 5th Cir Order, 20-KH-466, 2/17/21.
[9] State ex rel. Mollette v. Vannoy, 316 So. 3d 827 (La. 2021); State Rec. Vol. 17 of 17.
[10] Rec. Doc. 6. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Molette declared that he placed his federal application in the prison mailing system on July 29, 2021.  Rec. Doc. 6, p. 19.

is procedurally defaulted.[11]  The state contends that Molette's fifth through eighth claims are based upon state law and are not cognizable on habeas review.[12]  It asserts that the remaining claims are meritless.[13]

Molette retained counsel in June 2022.[14]  On September 15, 2022, Molette's counsel sought leave to file a reply memorandum.[15]  Leave was granted, and Molette's counseled reply memorandum was filed on September 19, 2022.[16]  Molette asserts that he exhausted his first claim on direct appeal.[17]  The reply memorandum does not address his second claim relating to nonunanimous jury verdict, but reiterates his arguments related to claims three through eight.[18]

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> In this case, Tommie Molette, defendant-herein, is charged with second degree murder and attempted second degree murder for his involvement in a shooting incident that occurred on October 8, 2013 at 5923 Becker Street.  The Hicks brothers – Kevin and Kevias – were also charged with second degree murder and attempted second degree murder for their involvement in the Becker Street incident.

> In that same indictment, the grand jury also charged the Hicks and, their younger brother, Kedrick Anderson, with two counts of attempted second degree murder for their involvement in another shooting incident that occurred on July 13, 2013, at 2800 Mount Kennedy.  Although defendant-herein was only indicted for the October Becker Street shootings, he and the Hicks brothers were tried at the same time.

> For clarity and completeness in addressing defendant's assignments of error, this opinion includes all of the germane testimony elicited at trial regarding

---

[11] Rec. Doc. 21, pp. 3-7.

[12] Id., at p. 19.

[13] Id., at pp. 9-19.

[14] See Rec. Docs 22 and 23.

[15] Rec. Doc. 25.

[16] Rec. Docs. 26 and 27.

[17] Rec,. Doc. 27, pp. 2-4.

[18] Id., at pp. 4-9.

five shooting incidents connected by ballistics and/or testimony to two groups of people. The first incident occurred on June 22, 2013, when A.P. was fired on while driving his girlfriend, J.A.'s, vehicle. Testimony reflected that A.P. was targeted because he had been deemed a "rat."[3] Ballistics were not recovered from that event.

[3] In 2010, A.P. and Richshawn Williams, an associate of the Hicks brothers, were charged with multiple counts of armed robbery. In 2011, A.P. pled guilty to one count of the lesser charge of accessory after the fact to armed robbery in exchange for a reduced sentence of three years; Williams pled guilty to one count of armed robbery in exchange for a sentence of twenty years. The disparity in their sentences created tension between A.P. and Williams.

The second incident occurred on July 13, 2013, at approximately 9:45 p.m. at the Ridgefield Apartments on Mount Kennedy Drive in Marrero. During the Mount Kennedy incident, J., the two-year-old son of A.P. and J.A., was shot in the chest. J.A., the child's mother, testified that, "Kevias [Hicks'] face was the face in the front that I saw" shooting at her son and her that night. J.A. also saw Kedrick Anderson with a "big gun" that night. J.A. stated that she did not see Kevin Hicks that night.[4] Ballistics matched spent 9-mm shell casings recovered from the Mount Kennedy scene to two later shootings: the Bridge shooting and the Becker Street shooting.[5]

[4] Originally, J.A. positively identified Kevin, Kevias, and Anderson from photographic lineups as the shooters. However, at trial, she testified that she did not recall seeing Kevin's face.

[5] A full discussion of ballistics evidence presented at trial is presented *infra*.

The third incident was a shooting that occurred on the Crescent City Connection on July 16, 2013. During that incident, Kevias Hicks was shot by someone riding in a nearby vehicle. Neither Kevias nor Kedrick Anderson, who was also in the car, would identify the assailant. However, J.A. testified that, at some point, A.P. told her that he and Kevias were shooting at each other on the "bridge." A spent 9-mm shell casing found inside the Hicks' vehicle matched the ballistics of casings found at the Mount Kennedy and Becker Street shootings.

In the fourth incident, which occurred on August 12, 2013, at the Beechgrove Apartments in Westwego, Aubrieon Davis, who is the mother of Kedrick Anderson's son, was fired upon by A.P. while she was driving. Subsequently, A.P. pled guilty to aggravated assault with a firearm on Aubrieon Davis for that incident. Ballistics from the .40 caliber casing recovered at Beechgrove matched a casing found in the roadway after the Bridge shooting on July 16, 2013.

Finally, the only shooting pertinent to defendant-herein occurred on October 8, 2013 at 5923 Becker Street in Marrero. The surviving victim, Jonquell Neal, testified that he and his friend, Deshon Evans, were recording rap music in a studio at Deshon's house, when they heard a knock at the front door. Evans opened the door to Kevin and Kevias Hicks, and defendant-herein, Tommie Molette. Neal remembered that when Kevias came to the door, he said something about running

from another shooting where a child had been shot.  After the men talked for a little while, they decided to record a song in Deshon's studio.

After they had been rapping and recording for a while in the studio, Neal heard Kevias say that he was a "god" and that "your life is in my hands."  Neal was concerned but continued writing his song.  When he heard a loud sound, Neal thought it was the music at first.  But when Neal looked up, Evans' blood was all over him, and Evans was dead.  Neal saw Kevin, Kevias, and defendant-herein shooting in Evans' direction.  Neal saw defendant-herein shoot him in the leg.

Neal testified that, after he was shot, he picked up Evans' firearm from the floor, and put it in his lap.  When Kevin tried to shoot him, Neal raised Evans' weapon, "let off a shot," and Kevin left.  Neal stated that more than twenty-five or thirty shots were fired.

That night, Neal received four gunshot wounds in his shoulder, thigh, and "feet."  Immediately after the shooting, Neal positively identified Kevin, Kevias, and defendant-herein as the shooters in photographic lineups.  Neal further reported in his statement at the hospital to Sergeant Gary Barteet of the Jefferson Parish Sheriff's Office ("JPSO") that Kevias was shooting a 9-mm Smith and Wesson, that Kevin was using a 9-mm Beretta, and that defendant-herein was using a .40 caliber Colt.  At trial, Neal testified that he was "100% sure" that Kevin, Kevias, and defendant-herein were the individuals who shot Evans and him that night.

Dr. Susan Garcia of the Jefferson Parish Forensic Center, who was accepted as an expert in the field of forensic pathology, conducted the autopsy on Deshon Evans.  She explained that Deshon Evans' cause of death was multiple gunshot wounds,[6] including a lethal wound to the head, and that his manner of death was homicide.

[6] Dr. Garcia testified that Deshon Evans received six gunshot wounds: a projectile entered the upper left chest near the arm pit and exited through his arm; a projectile entered the left forearm and exited through his back; another projectile entered the forearm and exited above the wrist; a projectile entered the back side of the right thigh going through the muscle and exiting the thigh; a fifth projectile entered decedent's cheek going from right to left but did not exit; and the sixth projectile was the lethal wound to the right side of the head that penetrated his brain.  Dr. Garcia recovered intact projectiles from the decedent's brain.

Special Agent William Charles Williams of the FBI was accepted as an expert in the field of historical cell site analysis.  Agent Williams analyzed historical records for two phone numbers – one associated with Kevin Hicks and one associated with defendant-herein – for the early morning hours of October 8, 2013.  According to Agent Williams, both phones utilized the cellular phone tower nearest to 5932 Becker Street numerous times between 1:04 a.m. and 1:41 a.m. Williams testified that further data was consistent with both phones leaving the area around Becker, traveling along the Westbank Expressway, over the Mississippi River via the Crescent City Connection, and traveling north to the New Orleans

East area.  Williams testified that both phones were utilizing the nearest tower to 7840 Mills Avenue in New Orleans East between 2:52 a.m. and 2:54 a.m.  The Mills Avenue address in New Orleans is associated with the Hicks' mother.

In order to connect the incidents, the State presented evidence regarding spent cartridge casings recovered at the scenes of the Mount Kennedy, the Beechgrove, the Bridge, and the Becker Street shootings.  JPSO Deputy Jené Rauch, who is the supervisor of the firearms and tool mark section for the JPSO Crime Lab, was accepted as an expert in the field of firearm and tool mark examination.

Deputy Rauch testified that, after the July 13, 2013 Mount Kennedy shooting, fourteen casings that were fired "in the same" 9-mm weapon were recovered.  Further, 2 casings were recovered that had been fired from a second 9-mm firearm.  Also, eight 7.62 by 39-mm caliber casings were recovered that were all fired "in the same weapon."  Finally, one .45 caliber casing was found on the scene.

Deputy Rauch testified that, after the July 16, 2013 shooting on the Crescent City Connection Bridge, two casings were recovered: a 9-mm casing recovered from inside of the Hicks' vehicle and a .40 caliber casing recovered from the roadway of the Bridge. Ballistics revealed that the .40 caliber casing at Beechgrove was fired from the same .40 caliber pistol used during the shooting on the Bridge that injured Kevias Hicks.

Deputy Rauch further testified that, after the Becker Street shootings in October of 2013, eight 9-mm casings were recovered that were fired from the same 9-mm pistol.  Next, four 9-mm casings were recovered that were fired from a second 9-mm pistol.  Further, thirteen casings fired from a .40 caliber pistol were recovered.  Finally, a .45 caliber Taurus pistol was recovered from the scene but ballistics confirmed that it was damaged by a bullet during the shooting, which prevented it from firing that night.

Deputy Rauch testified that the ballistics database used by law enforcement connected the same 9-mm firearm to four shootings: Mount Kennedy on July 13, 2013; the Bridge Shooting on July 16, 2013; the Becker Street shooting on October 8, 2013; and a homicide at I-10 and Clearview Parkway on December 30, 2013.  At Mount Kennedy, fourteen 9-mm rounds were shot from this weapon.  After the Bridge shooting, one expended 9-mm casing from this weapon was found on the floor of the interior of the vehicle driven by the Hicks brothers that night.  At Becker Street, eight 9-mm rounds were shot from this weapon.  Finally, three casings fired from this weapon were found at the Clearview/I-10 homicide but further investigation revealed that the December homicide was not linked to the instant crimes.[7]

---

[7] Trial testimony revealed that an unrelated defendant pled guilty to the December homicide on Clearview Parkway at I-10.

JPSO Deputy Chief Timothy Scanlan, who is the Commander of the Technical Services Bureau, was accepted as an expert in the fields of firearms and tool mark examination, blood stain pattern analysis, and crime scene reconstruction. Deputy Chief Scanlan investigated the Mount Kennedy and Becker Street crime scenes and formulated conclusions. Deputy Chief Scanlan asserted that Jonquell Neal's testimony was consistent with the cartridge case distribution and the angles of fire at the Becker Street crime scene. He also asserted that after reviewing reports of the Mount Kennedy scene, what he found there was consistent with the description of events provided by J.A.

After hearing the testimony and evidence, the twelve-person jury found defendant-herein guilty of the second degree murder of Deshon Evans and the attempted second degree murder of Jonquell Neal. Defendant-herein appeals his convictions.[19]

## I.    Claim 1 – Constitutionality of Louisiana Joinder Statutes

In his first claim, Molette asserts that Louisiana's joinder articles 493, 494, 495, 495.1 and 704 are unconstitutional because they allowed a joint trial for offenses he was charged with along with those he was not in violation of due process. The state argues that this claim is procedurally barred from federal review. Molette asserts that he exhausted the claim on direct appeal.

On direct appeal, Molette asserted that the state trial court erred in denying his motion to sever, his re-urged motion to sever and corresponding motion to quash, his re-urged motion to quash and motion for mistrial, and motion for new trial. Claims five through eight in his habeas petition attack the denial of those motions. Molette did not argue on direct appeal that the joinder statutes are unconstitutional and the Louisiana Fifth Circuit did not discuss the constitutionality of the joinder statutes.

Rather, Molette raised this claim in his application for post-conviction relief. The state district court found the claim procedurally barred pursuant to La. Code Crim. P. art. 930.4(B) for failure to raise the claim earlier.[20] The Louisiana Fifth Circuit Court of Appeal agreed with the

---

[19] Molette, 258 So. 3d at 1084-87; State Rec. Vol. 17 of 17.
[20] State Rec. Vol. 12 of 17, Order, 10/5/20, p. 1.

state district court's finding.[21]  Notably, contrary to the state's argument, the Louisiana Supreme Court did not adopt that finding but rather specifically found that "applicant fails to satisfy his post-conviction burden of proof.  La.C.Cr.P. art. 930.2" as to the claim.[22]

Article 930.2 provides that "[t]he petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."  Courts have found that the Louisiana Supreme Court's citation to La. Code Crim. P. art. 930.2 that does not also include a citation to any other grounds is a decision on the merits and does *not* constitute a state procedural bar.  Darby v. Vannoy, No. 19-13900, 2020 WL 5468953, at *7 (E.D. La. Aug. 14, 2020) (collecting cases), adopted, 2020 WL 5436571, at *1 (E.D. La. Sep. 10, 2020).  In this case, the Louisiana Supreme Court only cited to La. Code Crim. P. art. 930.2.  As a result, the Court rejects the state's position that this claim is procedurally barred, and will address the merits of the claim.

Molette claims that article 704 is unconstitutional because it provides too great discretion to the district attorney and the trial court without regard to due process.  He further generally claims that articles 493, 494, 495, 495.1 and 704 deny constitutional protections.  Molette argues that he was not a suspect in two of the counts charged against the Hicks brothers.  He argues that a joint trial exposed him to other crimes evidence, and that he was prejudiced by the evidence of the other offenses of his co-defendants.

La. Code Crim. P. Art. 493 permits the joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan" and the offenses are triable by the same mode of trial.  A defendant properly charged in the same

---

[21] State Rec. Vol. 12 of 17, La. 5th Cir Order, 20-KH-466, 2/17/21, p. 2.
[22] Mollette, 316 So. 3d at 827; State Rec. Vol. 17 of 17.

indictment with two or more offenses pursuant to La. Code Crim. P. Art. 493 may nonetheless move for a severance of the offenses under La. Code Crim. P. Art. 495.1, which provides as follows:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

> La Code Crim. P art 494 provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

> La. Code Crim. P. art. 704 states as follows:

> Jointly indicted defendants shall be tried jointly unless:

> (1) The state elects to try them separately; or

> (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.

Pursuant to La Code Crim P. art 495, "[t]he objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment."

To the extent Molette claims the above joinder provisions are unconstitutional under the Louisiana Constitution, his claim is not cognizable on federal habeas review. A federal habeas court's review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991). A federal court may not grant habeas relief based on an alleged error in the interpretation or application of state law. Estelle, 502 U.S. at 68; see also Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus

proceeding to review errors under state law") (citation and quotation omitted); Swarthout v. Cooke, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of state law).

To the extent Molette claims that the Louisiana statutes relating to joinder violate the United States Constitution, his claim does not warrant federal habeas corpus relief.   Molette must show the denial of his claim "was contrary to, or involved an unreasonable application of, *clearly established Federal law*, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added).  Here, "[t]here is no clearly established federal law set forth by the Supreme Court holding that co-defendants have a right under the Due Process Clause not to be joined for trial, even for defendants with antagonistic defenses."  Duckett v. Vannoy, Civ. Action No. 16-6823, 2017 WL 6001729, at *11 (E.D. La. June 7, 2017), adopted, 2017 WL 5992077 (E.D. La. Dec. 4, 2017), certificate of appealability denied, 2018 WL 11252843 (5th Cir. Oct. 2, 2018).  On the contrary, the United States Supreme Court has observed that there is generally "a preference ... for joint trials of defendants who are indicted together," opining, "[j]oint trials play a vital role in the criminal justice system.  They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.  For these reasons, we repeatedly have approved of joint trials."  Zafiro v. United States, 506 U.S. 534, 537 (1993) (citations and quotation marks omitted).  The Supreme Court also expressly noted that "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 540.  In addition, even where there may be some potential risk of prejudice in a joint trial, it is normally "of the type that can be cured with proper instructions, and juries are presumed to follow their instructions."  Id. (quotation marks omitted).

Accordingly, because Molette cannot establish that the Louisiana Supreme Court's decision denying this claim was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States, the AEDPA requires that this federal court defer to that state court ruling and likewise deny relief.

## II.    Claim 2 – Non-Unanimous Jury Verdict

Molette next claims that Article 1 § 7 of the Louisiana Constitution and La. Code Crim. P. art. 782 are unconstitutional as, at the time of his trial, they permitted non-unanimous jury verdicts. The state responds that Molette's claim is irrelevant as the jury verdict against him was unanimous. The state is correct.

Molette raised this claim in his application for post-conviction relief.  The state district court found it was meritless as he was convicted of both counts by a unanimous jury.[23]  The Louisiana Fifth Circuit agreed with the findings of the state district court.[24]  The Louisiana Supreme Court found that Molette failed to meet his burden of proof as to this claim under La. Code Crim. P. art. 930.2.[25]

The record demonstrates that, after the verdict was read, the state trial court polled the jurors at the request of the defense.[26]  After doing so, the state trial court stated as follows:

> I have reviewed the polling forms.  If counsel wishes, they are to be reviewed here at the bench but I will tell you they are unanimous verdicts on every count except that there is one juror who voted no as to Count 3 for defendant Kevin Hicks.  And the same juror voted no as to Count 4 for defendant Kevin Hicks.  And all the remaining verdicts are unanimous.  I'm ordering these be placed under seal. I'm ordering that the verdicts of the jury be made the order of the court.[27]

At sentencing, the state trial court again confirmed that the verdicts against Molette were unanimous, stating as follows:

---

[23] State Rec. Vol. 12 of 17, Order, 10/5/20, p. 1.
[24] State Rec. Vol. 12 of 17, La. 5th Cir. Order, 20-KH-466, 2/17/21.
[25] State ex rel. Mollette, 316 So. 3d at 827; State Rec. Vol. 17 of 17.
[26] State Rec. Vol. 5 of 17, Trial Transcript, 6/2/17, at pp. 49-50.
[27] Id., at p. 50.

And the Court will take specific and in particular of the fact that the jury was in fact polled and the jury verdict as to Mr. Tommie Molette on both the murder and the attempted murder charge was in fact 12-0 guilty as charged.[28]

Given that the verdicts finding Molette guilty were unanimous, his claim necessarily fails.

Molette is not entitled to federal habeas corpus relief on this claim.

### III.    Claim 3 and 4 – Ineffective Assistance of Counsel

Molette claims ineffective assistance of trial counsel.  He specifically claims his counsel was ineffective in failing to allow him to testify on his own behalf.  He further claims that his counsel was ineffective in failing to object to Detective Barteet's testimony concerning cellular "phone dumps."

Molette raised these claims in his application for post-conviction relief.  The state district court found:

> Petitioner claims that counsel was ineffective in failing to allow petitioner to testify on his own behalf.  This is clearly a strategic decision.  Petitioner cannot prove that had he testified, the outcome of the trial would have been different.  In fact, as the State points out in its response, the record reflects that petitioner expressly waived his right to testify on his own behalf when examined by the court, stating that he wanted to remain silent and that it was in fact his decision to do so.  Petitioner fails to prove any deficiency in counsel's performance, or any prejudice resulting.

> Claim 4

> Petitioner claims that counsel was ineffective for failing to object to a detective witness testifying outside of his area of expertise.  The court finds this claim vague, speculative, and conclusory.  Petitioner fails to provide details.  He mentions Det. Barteet, who trial testimony includes discussing cell phone information which had been previously introduced by Det. Burke's prior testimony.  Furthermore, he was testifying as to cellphone downloads in which he participated, and thus held personal knowledge.

> Petitioner fails to prove any deficiency in counsel's performance regarding Det. Barteet's trial testimony, or any prejudice resulting.[29]

---

[28] State Rec. Vol. 5 of 17, Sentencing Transcript, 6/26/17, at p. 11.
[29] State Rec. Vol. 12 of 17, Order, 10/5/20, p. 2.

The Louisiana Fifth Circuit agreed with the state district court's findings.[30]  The Louisiana Supreme Court found Molette failed to show he received ineffective assistance of counsel under the standard of Strickland.[31]

The United States Supreme Court has established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel

---

[30] State Rec. Vol. 12 of 17, La. 5th Cir. Order, 20-KH-466, 2/17/21.
[31] State ex rel. Mollette, 316 So. 3d at 827; State Rec. Vol. 17 of 17.

falls within a wide range of reasonable representation . See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because Molette's ineffective assistance of counsel claims were denied on the merits, and because such a claim presents a mixed question of law and fact, Molette is entitled to federal habeas relief on the claim only if he shows that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (emphasis added; citations omitted). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential

standards, it simply cannot be said that relief is warranted with respect to any aspect of Molette's ineffective assistance of counsel claims.

### A. Right to Testify

Molette claims that he was never told that he had a constitutional right to testify on his own behalf. He also claims that his attorney failed to allow him to testify. The state responds that the record contradicts Molette's claims.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. Rock v. Arkansas, 483 U.S. 44, 49 (1987); Bower v. Quarterman, 497 F.3d 459, 473 (5th Cir. 2007); Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir. 1994). When a habeas petitioner alleges that his counsel, not the court or the prosecution, prevented him from testifying, the Fifth Circuit has held that the " 'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" Sayre, 238 F.3d at 634 (quoting United States v. Brown, 217 F.3d 247, 258-59 (5th Cir. 2000)). A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary. Bower, 497 F.3d at 473 (citing Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of this right occurs only if the " 'final decision that [the defendant] would not testify was made against his will.' " Emery, 139 F.3d at 198 (quoting United States v. Teague, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." Turcios v. Dretke, No. 97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991));

accord <u>Jones v. Cain</u>, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.);

<u>Davis v. Quarterman</u>, No. 06-3606, 2007 WL 1886272, at *6 (S.D. Tex. Jun. 29, 2007).

In <u>Underwood</u>, the United States Eleventh Circuit Court of Appeals identified numerous

problems that would result if habeas petitioners were not required to satisfy the burden of proof.

<u>Underwood</u>, 939 F.2d at 475-76.  Adopting the reasoning in <u>Siciliano v. Vose</u>, 834 F.2d 29, 31

(1st Cir. 1987), the <u>Underwood</u> court recognized that an assertion that counsel forbade the

defendant from testifying, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify
> in his own defense was denied him.  It just is too facile a tactic to be allowed to
> succeed.  Some greater particularity is necessary - and also we think some
> substantiation is necessary, such as an affidavit from the lawyer who allegedly
> forbade his client to testify - to give the claim sufficient credibility to warrant a
> further investment of judicial resources in determining the truth of the claim.

<u>Underwood</u>, 939 F.2d at 475-76; <u>accord</u> <u>Gross v. Knight</u>, 560 F.3d 668, 672 (7th Cir.), <u>cert. denied</u>,

558 U.S. 950 (2009).

Addressing similar claims, the United States Fifth Circuit has also cited to the <u>Underwood</u>

holding and "observed that allowing a bare assertion of a right-to-testify violation to precipitate

the further investment of judicial resources is problematic."  <u>United States v. Martinez</u>, 181 F.3d

627, 628 (5th Cir. 1999) (quoting <u>Underwood</u>, 939 F.2d at 476) (a conclusory assertion by a

defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t

just is too facile a tactic to be allowed to succeed").  The Fifth Circuit agreed that there is "a grave

practical difficulty in establishing a mechanism that will protect a criminal defendant's personal

right ... to testify in his own behalf without rendering the criminal process unworkable."  <u>Id.</u> at 628

(citing <u>Underwood</u>, 939 F.2d at 475).

Molette claims that his counsel led him to believe that "his testimony was entirely dependent on his attorney's decision.[32] Molette, however, has presented no support for his claim that his counsel would not allow him to testify. Thus, Molette's unsupported claim, even in a verified petition, is insufficient to prove his claim on habeas corpus review. His self-serving allegations fall far short of establishing that counsel prevented him from testifying. His argument, therefore, is in a similar posture as that rejected in <u>Underwood</u>. There is nothing in this record sufficient to prove an actual violation of his right to testify by his trial counsel.

Instead, the record includes the state trial court's discussion with Molette about his right to testify. The state trial court gave Molette ample opportunity to confirm or object to the waiver of his right to testify. As the defense prepared to rest at trial, and immediately after the state trial court advised the co-defendants of their right to testify, the state trial court had the following conversation with Molette:

> THE COURT: Mr. Molette, likewise sir, you understand that you have a 5th Amendment right under the United States Constitution as well as the right under the Louisiana State Constitution not to incriminate yourself you have a right to remain silent and not testify here at trial? Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand you also have the right to waive that right, and to testify in your own defense if you choose to do so? You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand in the event that you did choose to testify you would be subject to cross-examination by the assistant district attorneys as well as would be judged by the jury just as any other witness is judged? You understand that?
>
> THE DEFENDANT: Yes, sir.

---

[32] Rec. Doc. 25-2, p. 7.

THE COURT: And sir, you have had the benefit of Mr. Vedros as counsel here throughout this trial?

THE DEFENDANT:  Yes, sir.

THE COURT: You have had an opportunity to discuss with Mr. Vedros whether or not you want to testify on your own behalf?

THE DEFENDANT:  Yes, sir.

THE COURT: And you understand the decision as to whether or not you testify or not is your decision and yours alone?

THE DEFENDANT:  Yes, sir.

THE COURT: And you have decided, sir, whether or not you want to testify here or you want to remain silent?

THE DEFENDANT:  I want to remain silent.

THE COURT: And that decision to remain silent is in fact your decision and yours alone?

THE DEFENDANT:  It's my decision.

THE COURT: Thank you very much, sir.  Mr. Vedros, do you have anything?

MR. VEDROS: No, your honor.

THE COURT:  Very good.  Thank you.[33]

Molette was given the opportunity to voice his concerns about his right to testify and instead indicated to the court that he was freely waiving his right to testify.  Despite this waiver, Molette claims that his counsel would not allow him to testify.  Again, there is no evidence that Molette's trial counsel prohibited him from testifying.

Even if counsel, however, advised him against testifying, Molette has not established that such advice was unreasonable or prejudicial.  On federal habeas review, "the decision whether to

---

[33] State Rec. Vol. 5 of 17, Trial Transcript, 6/2/17, pp. 35-41.

put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985) (citing Hollenbeck v. Estelle, 672 F.2d 451, 454 (5th Cir. 1982)).  However, a defendant's right to testify on his own behalf "may not be waived by counsel as a matter of trial strategy." United States v. Mullins, 315 F.3d 449, 454 (5th Cir. 2002).  When the record shows that the defendant knew of his right to testify and wanted to testify, but simply acquiesced to his attorney's advice, the "only inquiry is whether that advice was sound trial strategy." Id. at 453-54.

In Molette's case, if he were to testify, he would have been exposed to cross-examination regarding his guilt and character.  In addition, Molette does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided to benefit his defense.

Under these circumstances, it was reasonable for defense counsel to have determined that the prejudice posed by potential cross-examination outweighed any benefit that Molette's testimony might have provided to his defense.  Molette has not demonstrated that ay alleged advice by counsel to not testify was unreasonable or that the outcome of the trial would have been different but for his counsel's decision to rest the defense without his testimony.

Molette has not demonstrated a deficiency or prejudice resulting from counsel's failure to call him to testify.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Molette is not entitled to relief on this claim.

### b. Failure to Object to Barteet's Testimony

Molette next claims that his trial counsel was ineffective in failing to object to Detective Barteet's testimony concerning cell phone "dumps."  He claims that Sergeant Barteet testified "outside his area of expertise" in violation of his right to confrontation and Melendez-Diaz v. Massachusetts, 577 U.S. 305 (2009).

The state responds that Molette fails to adequately plead his claim, and further fails to prove deficient performance. The state points out that Sergeant Barteet was actually present during the cell phone downloads and, thus, had personal knowledge about them. The state further explains that Barteet identified exhibits that had been previously admitted in evidence through the testimony of Detective Burke, who was qualified as an expert in mobile device forensics.

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." This right ensures reliability of the evidence by requiring statements under oath, submission to cross-examination, and the opportunity for the jury to assess witness credibility. California v. Green, 399 U.S. 149, 158, (1970). The Supreme Court has long held that testimonial statements, those statements made for the purpose of establishing or proving a particular fact, are inadmissible in criminal prosecutions, unless the declarant is unavailable for trial and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 59 & 68-89, (2004). However, the Confrontation Clause does not prohibit the admissibility of non-testimonial statements. Davis v. Washington, 547 U.S. 813, 821 (2006). Instead, it applies only to " 'witnesses' against the accused ... those who 'bear testimony[,]' " Crawford, 541 U.S. at 51, and only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Davis, 547 U.S. at 821. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id.

In Melendez-Diaz v. Massachusetts, the Supreme Court held that the state trial court violated the defendant's Sixth Amendment right to confront his accuser when the court admitted a certificate of a drug analysis report as prima facie evidence of the results contained within the report without the testimony of the analyst who performed it. 557 U.S. 305, 311 (2009). The

Supreme Court held that the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront the analyst who prepared the forensic report admitted into evidence at trial unless the analyst is unavailable and the defendant had a prior opportunity to cross-examine the analyst.  Id.  Later, in Bullcoming v. New Mexico, 564 U.S. 647 (2011), the Supreme Court deemed a certified blood-alcohol forensic laboratory report, prepared to assist a police investigation and establish or prove a fact in a criminal proceeding, testimonial in character.  Id., 564 U.S. at 663-45.  The in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification did not satisfy the accused's constitutional right to confrontation.  "The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist."  Id., 564 U.S. at 652.

In this case, Sergeant Barteet, the lead investigator of the Evans homicide and the attempted homicide of Neal, testified that he applied for search warrants to retrieve the cell phone data from the providers.[34]  Barteet explained that he participated in the "phone dumps," which use software to extract the data on a phone and put it in an electronic format that can be read, and that he reviewed data from the phones.[35]  Barteet identified some individuals in images that were recovered from Evans' phone.[36]  He also identified images and contact information taken from the cell phone belonging to Molette and Kevin Hicks.[37]

Notably, prior to Barteet's testimony, the state trial court accepted Detective Burke as an expert in the area of mobile device forensics, without objection from the defense.[38]  Reports

---

[34] State Rec. Vol. 5 of 17, Trial Transcript, 6/1/17 (con't), pp. 275-277, 285.
[35] Id., at pp. 278-79.
[36] Id., at pp. 279-81.
[37] Id., at pp. 282-86, 333-34.
[38] State Rec. Vol. 3 of 17, Trial Transcript (con't), 5/31/17, p. 141.

including the data extracted from the phones through the use of Cellebrite, a cell phone forensics software, were identified by Burke and admitted into evidence.[39]  The defense waived cross-examination of Burke.[40]

Molette fails to recognize that the images and contact information that were discussed or identified by Barteet were excerpted portions of cell phone extraction reports previously introduced into evidence through Detective Burke's testimony without objection by the defense.[41]  Molette does not claim that Burke's testimony violated his right to confrontation or that his counsel was ineffective in failing to object or cross-examine Burke.   Additionally, raw cell phone extraction reports that include "only machine-generated results" are non-testimonial.[42]  United States v. Hill, 35 F. 4th 366, 390 (5th Cir. 2022).

Further, Barteet was present for and participated in the cell phone dumps.[43]  Barteet testified regarding his personal knowledge about the images and contact information from the cell phones that were already part of the cell phone reports in the record.  There was no basis to object to his testimony.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d 959, 966 (5th Cir.1994).  Nor has Molette established any prejudice resulting from counsel's failure to object to the testimony.

For the forgoing reasons, the state courts' denial of relief on Molette's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He is not entitled to relief as to this claim.

---

[39] Id., at pp. 144, 147-56.
[40] Id., at pp. 156-57.
[41] Id., at pp. 147-56.
[42] Even if *curated* extraction reports were introduced into evidence and were considered testimonial, Burke's testimony did not violate the confrontation clause.  See Hill, 35 F.4d at 390.
[43] State Rec. Vol. 5 of 17, Trial Transcript (con't), 6/1/17, p. 278.

## II.    Claims 5-8 – Denial of Motions

Molette claims that the trial court erred in denying his motion to sever, motion to quash, motion for mistrial, and motion for new trial.  Molette claims that he was severely prejudiced by the joint trial with his co-defendants and was denied a fair trial under the Fourteenth Amendment. He claims that the evidence presented against the co-defendants showed repeated actions consistent with retaliatory gang shootings.

The state asserts that Molette's state-law claims are not cognizable on federal habeas review.  Molette responds that the denial of his motions resulted in a violation of due process.

Molette's trial counsel filed a motion to sever defendants for trial.[44]  At the June 24, 2016 hearing on the motion to sever, Molette's counsel argued that Molette was not charged with the July shooting nor was he a suspect in other prior acts, and he would be prejudiced be a joint trial.[45] The state argued that the defendants gained entry to Evans's residence after the Hicks' brothers told him they were on the run from the police as a result of their involvement in the July shooting.[46] The state trial court denied the motion finding that the jury would be able to clearly distinguish between the separate incidents charged, and that there would be no undue prejudice to Molette.[47] Molette's related writ application was denied by the Louisiana Fifth Circuit on August 24, 2016.[48]

On May 22, 2017, Molette's counsel filed a motion to quash the indictment claiming that Molette would be prejudiced by a joint trial due to the evidence of other shooting incidents allegedly involving the Hicks brothers.[49]  At a hearing, Molette's counsel argued that Molette would be prejudiced by the state's evidence of multiple shootings involving the Hicks brothers in

---

[44] State Rec. Vol. 1 of 17, Motion to Sever Defendants for Trial, 6/16/16.
[45] State Rec. Vol. 2 of 17, Hearing Transcript, 6/24/16, p. 3.
[46] Id., at pp. 2-5.
[47] Id., at p. 5.
[48] State Rec. Vol.1 of 17, La. 5th Cir. Order, 16-K-457, 8/24/16.
[49] State Rec. Vol. 1 of 17, Motion to Quash Indictment, 5/22/17.

which Molette was not implicated.[50]    The state trial court, in denying the motion to quash, explained:

> It remains the Court's belief that the indictment, as it stands, the evidence that will be presented against Mr. Molette is easily distinguishable by the jury where he is charged with a crime that occurred or crimes that occurred, counts that occurred in October and not with the ones that are charged -- that the Hicks are charged with -- the Hicks defendant are charged with in July.  And I think it's easy for the jury to compartmentalize those in their mind and certainly he has abled counsel here to ensure that the jury recalls he is only charged with the one count of murder and then the attempted murder that occurred on the October incident.  So for all those reasons, the Court denied the Motion to Quash.[51]

On May 31, 2017, the second morning of trial testimony, Molette's counsel renewed his motion to quash and moved for a mistrial on the basis of misjoinder of defendants and counts.[52] Molette's counsel argued that six out of the first seven witnesses gave testimony unrelated to Molette and that there was emotional testimony by the child victim's motion which resulted in some jurors tearing up when photographs of the child were shown.[53]  The trial court denied the motions finding as follows:

> There was extensive voir dire going on during the jury selection process, Mr. Vedros, as well as all counsel involved had an opportunity to voir dire the jurors.  The Court is comfortable that the jurors that we have selected is more than capable, and as this Court obviously intends to do and will do in the instructions will instruct the that they are only to consider the evidence against Mr. Molette that is presented as it relates to the October incident.  Again, the Court is comfortable that the level of voir dire, extensive voir dire, on that issue throughout the jury selection process and therefore, the motion is denied.[54]

On June 12, 2017, counsel for Molette filed a for new trial claiming it was impossible for him to receive a fair trial given the evidence of violent acts of the Hicks brothers.[55]  At a hearing

---

[50] State Rec. Vol. 2 of 17, Hearing Transcript, 5/22/17, pp. 6, 8-9, 12.
[51] Id., at p. 13.
[52] State Rec. Vol. 3 of 17, Trial Transcript, 5/31/17, p. 8.
[53] Id.
[54] Id., at p. 10.
[55] State Rec. Vol. 1 of 17, Motion for New Trial, 6/12/17.

on June 15, 2017, Molette's counsel argued that the misjoinder of offenses and defendants as well as the "other crimes" evidence that did not involve Molette warranted a new trial.[56]  In denying the motion, the state trial court explained:

> I will first address the motion for a new trial that was filed on behalf of Tommy [sic] Molette by Mr. Vedros.  In terms of – and obviously, it was argued pretrial.  It was appealed pretrial, the whole issue of the joinder  And I think that the jury's verdict is clearly illustrative of the fact that there was no prejudice to Mr. Molette, that the jury certainly understood exactly what it was that they were hearing.  That is evidenced by the fact that Mr. Kevin Hicks was in fact found not guilty on two of the two of the attempted murder charges with which he was charged which were from a separate incident murder the murder and attempted murder charges that Mr. Molette had.
>
> With regard to the motion to new trial as it relates to Tommy Molette, again, I think the jury's verdict is illustrative of the fact and this Court has every confidence that the jury was able to keep separate the incidents and therefore, the Court denied the motion for new trial as it relates to Mr. Molette.[57]

> On direct appeal, the Louisiana Fifth Circuit found as follows:

> La. C.Cr.P. art. 493 permits the joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan," and the offenses are triable by the same mode of trial.

> La. C.Cr.P. art. 494 provides the law regarding joinder of defendants:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.  Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

> La. C.Cr.P. art. 495 provides that, "[t]he objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment." La. C.Cr.P. art. 532 provides in pertinent part that a motion to quash may be based on one or more of the following grounds:

> * * * *

---

[56] State Rec. Vol. 5 of 17, Hearing Transcript, 6/15/17, p. 4.

[57] Id., at pp. 4-5.

(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.

A defendant properly charged in the same indictment with two or more offenses pursuant to La. C.Cr.P. art. 493 may nonetheless move for a severance of the offenses under La. C.Cr.P. art. 495.1, which provides as follows:

If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

In determining whether prejudice results from a joinder of offenses, the trial court must consider the following factors: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Fontenberry, 09-127 (La. App. 5 Cir. 10/27/09), 27 So.3d 904, 909-10, writ denied, 09-2665 (La. 5/28/10), 36 So.3d 246. In addition, it must be considered that prejudice from the joinder of offenses can be mitigated by clear jury instructions and by an orderly presentation of evidence by the State. State v. Davis, 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84, writ denied, 13-1205 (La. 11/22/13), 126 So.3d 479.

A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof. Motions to sever under La. C.Cr.P. art. 495.1 are within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. Factual, rather than conclusory, allegations are required when the defendant alleges prejudicial joinder of offenses on a motion to sever. State v. Fontenberry, 27 So.3d at 910. Finally, there is no prejudicial effect from joinder of offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. State v. Butler, 15-89 (La. App. 5 Cir. 7/29/15), 171 So.3d 1283, 1288, writ denied, 15-1608 (La. 10/10/16), 207 So.3d 408. In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. State v. Deruise, 98-0541 (La. 4/3/01), 802 So.2d 1224, 1232, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).

La. C.Cr.P. art. 704 provides the following regarding severance:

Jointly indicted defendants shall be tried jointly unless:

(1) The state elects to try them separately; or

(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.

Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm, 446 So.2d 729, 741 (La. 1984); State v. Condley, 04-1349 (La. App. 5 Cir. 5/31/05), 904 So.2d 881, 890, writ denied, 05-1760 (La. 2/10/06), 924 So.2d 163. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. A denial of a motion to sever will not be overturned absent a clear abuse of discretion. Id.

A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. Prudholm, 446 So.2d at 741; Condley, 904 So.2d at 890. The defendant bears the burden of proof in a motion to sever. State v. Jackson, 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 851-52, writ denied, 04-1298 (La. 10/29/04), 885 So.2d 585. The mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance. Prudholm, 446 So.2d at 741. Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. State v. Cedrington, 98-253 (La. App. 5 Cir. 12/16/98), 725 So.2d 565, 577, writs denied, 99-190 (La. 6/4/99), 743 So.2d 1249 and 99-431 (La. 6/25/99), 745 So.2d 1182. Antagonistic defenses are not the only instances where the denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will be best served by severance, it should be granted. Id.

Prejudice may occur in a joint trial "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." State v. Williams, 16-417 (La. App. 5 Cir. 8/30/17), 227 So.3d 371, 395 (quoting Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ). In Williams, this Court found that the fact that the defendant did not participate in the murder of Donte Hall, a charge for which only his co-defendant was indicted, was not a consideration for the trial court in determining whether a severance was required. Williams, 227 So.3d at 395.

A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent

an abuse of discretion.  State v. Pierce, 11-320 (La. App. 5 Cir. 12/29/11), 80 So.3d 1267, 1271.

Upon review, we find that the trial judge did not err by denying the Motion to Sever the Counts.[10]  Here, the counts were not misjoined under Article 493 since they were of the same or similar character as they all involved shootings.  Also, the evidence revealed that the shootings were part of a common scheme or plan because the defendants gained entrance to the Becker Street address by indicating that they were on the run from the Mount Kennedy shooting.

[10] Although defense counsel did not file a written Motion to Sever the Counts, he argued at the severance hearing that the July Mount Kennedy and October Becker Street offenses should have been severed for trial.  Further, defense counsel objected to the denial of his motion to sever the counts.  This opinion will address the error that was objected to at trial and raised on appeal.

Further, defendant did not meet his heavy burden of proving prejudicial joinder under La. C.Cr.P. art. 495.1.  At trial, the evidence of each crime was presented in an orderly fashion and the record does not reflect that the jury was confused by the various counts or that defendant was confounded in presenting his defense.

Additionally, the trial judge charged the jury separately as to each offense, explaining in detail what the State was required to prove with respect to each count.  The jury was instructed to consider each charge against each defendant for each victim separately.  Further, the jury was provided with separate verdict sheets for each defendant and each victim.[11]  Here, the jury was able to segregate the various charges and evidence as it returned not guilty verdicts for Kevin Hicks on the Mount Kennedy shootings but guilty on the Becker Street shootings.  See State v. Seay, 521 So.2d 1206, 1210 (La. App. 2nd Cir. 1988)("if the jury can keep the evidence of the offenses separate and distinct, as evidenced by acquittal on some and conviction on other charges, there is no prejudice.")

[11] See State v. Davis, 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84-85, writ denied, 13-1205 (La. 11/22/13), 126 So.3d 479, where this Court found that any possibility of prejudice in the joinder of offenses was mitigated by the jury instructions and the State's orderly presentation of the evidence, noting that the jury instructions listed the eight crimes with which the defendant was charged along with the responsive verdicts for each offense, that for the charges of second degree murder and attempted second degree murder the instructions specified the victim of each offense, that the instructions also provided the elements for each charged offense as well as the elements for each responsive verdict, and that the jury received eight separate verdict sheets each indicating the charged offense and the responsive verdicts.  This Court found that based on the foregoing, any possible juror confusion was minimized.

Accordingly, we find that these offenses did not warrant a severance and that the trial judge did not abuse his discretion in denying the motion to sever the counts.

Further, we find that the trial judge did not err by denying the Motion to Sever Defendants.  Here, defendants – Kevin, Kevias, and Molette – were not misjoined under La. C.Cr.P. art. 494 since they were alleged to have participated in

the same act constituting the offenses committed at Becker Street and that Kevin and Kevias were not misjoined under that same statute as they were alleged to have participated in the same act constituting the offenses committed at Mount Kennedy. Also, the State presented sufficient evidence to establish a link between the Becker Street shootings and the Mount Kennedy Street shootings. As such, if each offense were tried separately, the evidence of the related offense could have been admissible at both trials.

Moreover, there is no evidence that the defenses of the co-defendants were mutually antagonistic to the extent that one co-defendant attempted to blame another one. Moreover, defendant has not shown how he was prejudiced by the lack of a severance. Further, as was discussed above, the jury was instructed to consider each charge for each victim separately, was provided with separate verdict sheets for each defendant and each victim, and was able to segregate the various charges and evidence. See State v. Seay, supra.

At trial, approximately thirty witnesses testified regarding the two charged and three related offenses. Numerous witnesses and the overlapping nature of the facts leading to these charges necessitated the joint trial of the defendants to present a cohesive narrative for the jury. Piecemeal litigation is not sanctioned by the courts, and where the same witnesses would be called to testify, judicial economy dictates that there be one trial. Williams, 227 So.3d at 395 (citing Warren v. Bergeron, 599 So.2d 369 (La. App. 3rd Cir. 1992), cert. denied, 604 So.2d 995 (La. 1992) ). Thus, we find that the trial judge did not abuse his discretion in denying defendant's Motion to Sever Defendants.

Finally, in light of the foregoing discussion, there is no evidence of trial error resulting in substantial prejudice to defendant that deprived him of a reasonable expectation of a fair trial. See Pierce, supra. Accordingly, because we find no error in the trial court's denial of defendant's motion to sever either counts or defendants, we additionally find that the trial court did not abuse its discretion in denying the motion for mistrial based on misjoinder of defendants or offenses.

Finally, after his convictions, defendant filed a Motion for New Trial on the basis that he received an unfair trial because of the misjoinder of offenses and defendants. He added that there was "404(B)" information and incidents that came out during the trial which did not involve him at all. The trial judge denied the Motion for New Trial, stating:

> In terms of - - and obviously, it was argued pretrial. It was appealed pretrial, the whole issue of the joinder. And I think that the jury's verdict is clearly illustrative of the fact that there was no prejudice to Mr. Molette, that the jury certainly understood exactly what it was that they were hearing. That is evidenced by the fact that Mr. Kevin Hicks was in fact found not guilty on two of the two [sic] of the attempted

murder charges with which he was charged which were from a separate incident from the murder and attempted murder charges that Mr. Molette had.

With regard to the motion to new trial as it relates to Tommy Molette, again, I think the jury's verdict is illustrative of the fact and this Court has every confidence that the jury was able to keep separate the incidents and therefore, the Court denies the motion for new trial as it relates to Mr. Molette.

Defense counsel objected to the trial judge's ruling.

The motion for a new trial is based on the supposition that injustice has been done the defendant, and unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. C.Cr.P. art. 851(A). The decision on a motion for a new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle, 06-898 (La. App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied, 07-1067 (La. 11/21/07), 967 So.2d 1154.

For the reasons already discussed, we find that the trial court did not abuse its discretion by denying the Motion for New Trial based on the misjoinder of defendants and offenses. Accordingly, we find no merit to defendant's assignments of error.[58]

The Louisiana Supreme Court denied Molette's related writ application without reasons.[59]

Initially, to the extent that Molette claims that the state courts erred in failing to grant his motions under state law, such claims do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review. See Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); Haygood v. Quarterman, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing Dickerson v. Guste, 932 F.2d 1142, 1145 (5th

---

[58] Molette, 258 So 3d at 1090-94; State Rec. Vol. 17 of 17.
[59] Molette, 268 So. 3d at 304; State Rec. Vol. 10 of 17

Cir. 1991)); Maize v. Louisiana, Civ. Action No. 18-9393, 2021 WL 1519373, at *10 n. 45 (E.D. La. Mar. 18, 2021) ("allegations regarding the state courts' interpretation and application of Louisiana law on severance of offenses, even if erroneous, cannot establish grounds for federal habeas corpus relief."), adopted, 2021 WL 1517909 (E.D. La. Apr. 16, 2021); Keil v. McCain, Civ. Action No. 18-9410, 2019 WL 2439424, at *17 (E.D. La. May 21, 2019) (denial of motion to quash is a matter of state law and only reviewable if the denial constituted a violation of a constitutional right), adopted, 2019 WL 2437177 (E.D. La. June 11, 2019). Thus, even the misapplication of state law in denying the motions would not entitle Molette to relief. Thomas v. Ieyoub, 26 F.3d 1119, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) (per curiam) (Table, Text in Westlaw) ("[E]rrors of state law, such as a denial of a mistrial, must rise to a constitutional dimension in order to merit habeas relief."); Smith v. Whitley, 18 F.3d 937, 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) (Table, Text in Westlaw) ("Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance."). Any alleged impropriety based on state law does not warrant federal habeas review or relief.

Molette, however, also claims that the denial of his motions and the resulting joint trial with his co-defendants resulted in a violation of due process. This claim fares no better.

It is settled that "[s]everance is within the discretion of the trial court and is required only in cases of compelling prejudice." Breeland v. Blackburn, 786 F.2d 1239, 1241 (5th Cir. 1986) (citing United States v. MacIntosh, 655 F.2d 80, 84 (5th Cir. 1981)). "The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." Breeland, 786 F.2d at 1241 (citation omitted). For purposes of habeas review,

simultaneous trial of more than one offense must have rendered the state trial fundamentally unfair before a petitioner can obtain federal habeas relief.  Alvarez v. Wainwright, 607 F.2d 683, 685 (5th Cir. 1979) (quoting Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir. 1976)).

Similarly, a state court's denial of a motion to quash or for mistrial will trigger federal habeas corpus relief only if it was " 'error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.' "  Hernandez v. Dretke, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988)); Banks v. Vannoy, Civ. Action No. 17-1342, 2018 WL 6933467, at *6 (W.D. La. Oct. 31, 2018) (citation omitted), adopted, 2019 WL 113772 (W.D. La. Jan. 4, 2019), certificate of appealability denied, No. 19-30051, 2019 WL 8165957 (5th Cir. Oct. 25, 2019), cert. denied, 140 S.Ct. 1306 (2020). .  In order to receive federal habeas relief, petitioner must show that "the trial court's error had a 'substantial and injurious effect or influence in determining the jury's verdict.' "  Hernandez, 125 F. App'x at 529 (citing Brecht v. Abrahamson, 507 U.S. 629, 623 (1993)).  Molette must show that "there is more than a mere reasonable possibility that [the ruling] contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict."  Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir. 1996).

The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact.  Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); Manning v. Warden, Louisiana St. Penitentiary, 786 F.2d 710, 711-12 (5th Cir. 1986) (failure of state court to sever counts presents a due process question of fundamental fairness on habeas review) (citing Tifford v. Wainwright, 588 F.2d 954, 957 (5th Cir. 1979) (denial of motion to sever codefendant's trial from that of other codefendants, under facts of the case, made trial "fundamentally unfair.)).  The court must determine whether the denial of relief by the state courts was contrary to or an

unreasonable application of federal law.  In doing so, factual determinations made by the state court are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Molette claims that jurors must have inferred he was criminally responsible for the murder of Evans and attempted murder of Neal simply because he was tried with his co-defendants who had additional charges.  His allegation is not supported by the record.  The facts were not complex. The evidence was simple and distinct.  The offenses were easily segregated by the jury.  The state presented the evidence in an organized, coherent manner that allowed jurors to distinguish between the different offenses and victims.  The record does not reflect any confusion by jurors.  There was ample independent and objective evidence upon which to reject the defense.  Neal, the surviving victim, never waivered from his identification of Molette, Kevin Hicks, and Kevias Hicks as the perpetrators.[60]  Neal identified the caliber of gun each of the defendants used in the shootings.[61] The ballistics evidence from the scene was consistent the type of firearms as well as the location of the defendants in the room at the time of the shootings described by Neal.[62]  Cellular phone data showed that Molette's phone was in the area at the time of the crimes.[63]

Further, the jury instructions charged the jury separately as to each defendant, explained in detail what the state was required to prove as to each count, and instructed the jurors to consider each charge for each victims separately.[64]  Specifically, the state trial court charged the jury that

---

[60] State Rec. Vol. 3 of 17, Trial Transcript, 5/31/17, pp. 21, 24-25, 35 (Detective Dalton); State Rec. Vol. 4 of 17, Trial Transcript, 6/1/17, pp. 85-87, 90-91, 95, 141 (Neal); State Rec. Vol. 5 of 17, Trial Transcript (con't), 6/1/17, pp. 264, 266-68, 293, 335 (Sergeant Barteet); State Rec. Vol. 5 of 17, Trial Transcript 6/2/17, pp. 28-29 (Nunez).
[61] State Rec. Vol. 4 of 17, Trial Transcript, 6/1/17, pp. 82, 100, 149; State Rec. Vol. 5 of 17, Trial Transcript (con't), 6/1/17, p. 268 (Sergeant Barteet); Trial Transcript, 6/2/17, p. 27 (Nunez).
[62] State Rec. Vol. 3 of 17, Trial Transcript, 5/31/17, p. 197-99 (Deputy Rach); State Rec. Vol. 4 of 17, Trial Transcript, 6/1/17, pp. 178-82, 194-95 (Chief Scanlon).
[63] State Rec. Vol. 5 of 17, Trial Transcript (con't), 6/1/17, pp. 249-52 (Agent Williams)
[64] State Rec Vol. 1 of 17, Jury Charges, 6/2/17, pp. 8-35.

"[t]he case of each defendant should be considered separately and individually.  The fact that you may find one or more of the accused guilty or not guilty of any of the crimes charged should not control your verdict as to any other crime or any other defendant.  You must give separate consideration to the evidence as to each defendant."[65]  At the conclusion of the instructions, the state trial court reminded the jury that, "[e]ach count is to be considered separately and each defendant must be considered separately."[66]  There were also separate verdicts sheets as to each co-defendant and each charge.[67]  The jury is presumed to have followed the court's instructions. See Weeks v. Angelone, 528 U.S. 225, 226 (2000).

Finally, there is no showing that the jury was unable to understand and evaluate the elements of each offense, inferred a criminal disposition, or was hostile or imputed Molette's guilt as a result of the joinder of the co-defendants and their other offenses.  Notably, the jury found Kevin Hicks not guilty of the attempted second degree murder of the child victim and his mother.[68] Those verdicts demonstrate that the jury was able to compartmentalize the evidence and assess each count and each defendant independently.

The state courts' decision that joinder of the co-defendants and the resulting trial did not deny Molette due process or a fair trial is neither contrary to, nor an unreasonable application of federal law, as clearly established by the United States Supreme Court.  The state courts' denial of relief on these claims was not contrary to or an unreasonable application of federal law.  Molette is not entitled to relief on these claims.

---

[65] Id., at pp. 7-8.
[66] Id., at p. 36.
[67] State Rec. Vol. 1 of 17, Verdict -Count 1 as to Deshon Evans (as to Tommie C. Molette), 6/2/17; Verdict – Count 2 as to Jonquell Neal (as to Tommie C. Molette), 6/2/17.
[68] State Rec. Vol. 5 of 17, Trial Transcript 6/2/17, p. 49-50.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Tommie Molette be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[69]

New Orleans, Louisiana, this 11th day of October, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[69] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.